Robert M. Tzall, Esq.
Nevada State Bar No. 13412
Contemporary Legal Solutions
2551 North Green Valley Parkway
Building C, Suite 303
Henderson, NV 89014
(702) 666-0233
office@contemporarylegalsolutions.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| KAREN BRADY,<br><br>           Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC;<br>NATIONAL CREDIT ADJUSTERS, LLC,<br><br>           Defendants. | Case No.: 2:23-cv-1912<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL**<br><br>1.  FCRA, 15 U.S.C. § 1681 *et seq.*<br><br>2.  FDCPA, 15 U.S.C. § 1692 *et seq.* |

Plaintiff Karen Brady ("Plaintiff"), by and through her counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, against Defendant Equifax Information Services, LLC ("Equifax") and alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, against Defendant National Credit Adjusters, LLC ("NCA") (collectively, "Defendants").

**INTRODUCTION**

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by Equifax. Plaintiff contends that Equifax failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C.

§ 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2. Congress enacted the Fair Debt Collection Practices Act ("the FDCPA") in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. §1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.* Congress concluded that "existing laws…[we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." *Id*. at §§ 1692(b) & (c).

3. Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to ensure "that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.* at § 1692(e). After determining that the existing consumer protection laws were inadequate, *see id*. at § l692(b), Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act. *Id.* at § 1692k.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA and the FDCPA, both of which are federal laws. *See* 15 U.S.C. § 1681p (FCRA); *see also* 15 U.S.C. § 1692k(d) (permitting actions to enforce liability in an appropriate United States District Court).

5. Venue in the District of Nevada is proper pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District, Defendants regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

**PARTIES**

6. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

7. Plaintiff is a natural person who resides in the city of Las Vegas, County of Clark, Nevada.

8. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

9. Plaintiff is a "person" as defined the FDCPA, 15 U.S.C. § 1692d.

10. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309.

11. Defendant NCA is a "debt collector" as the phrase is defined in 15 U.S.C. § 1692a(6) and used in the FDCPA with its principal place of business is located at 327 W. 4th Avenue, Hutchinson, Kansas 67501 and can be served with process in Nevada c/o Corporation Service Company located at 112 North Curry Street, Carson City, NV, 89703.

12. Upon information and belief, NCA is a company that uses the mail, telephone, and facsimile and regularly engages in business, the principal purpose of which is to attempt to collect debts alleged to be due another.

13. During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Nevada and conducted business in the State of Nevada on a routine and systematic basis.

14. Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15

U.S.C. § 1681a(d), to third parties. Equifax regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f) of the FCRA.

15. During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

16. Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

**FACTUAL BACKGROUND**

17. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

18. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

19. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

20. The FCRA is intended to ensure CRAs exercise their weighty responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

21. Equifax, one of the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, regularly publishes and

1  distributes credit information about Plaintiff and other consumers through the sale of consumer reports
2  (i.e., credit reports).

3  　　　　22.　　Equifax's consumer reports generally contain the following information: (i) <u>Header/Identifying Information</u>: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

　　　　23.　　Equifax obtains consumer information from various sources. Some consumer information is sent directly to Equifax, and other information must be independently gathered by Equifax, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

　　　　24.　　Equifax also obtains information from other CRAs, who commonly share information.

　　　　25.　　Equifax regularly seeks out and procures consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports that Equifax sells to third parties for a profit.

　　　　26.　　The diligence Equifax exercises in uncovering and recording consumer bankruptcy filings is not replicated in Equifax's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

27. Equifax's unreasonable policies, procedures, and algorithms consistently fail to report consumer information accurately in their credit reports, as required by 15 U.S.C. § 1681e(b).

28. Equifax knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished and reported information, and information contained in its own files.

29. The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Equifax) to make lending decisions.

30. The information Equifax includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

31. FICO Scores are calculated using information contained in Equifax's consumer reports.

32. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

33. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

    b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating

that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

34. Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Equifax in consumer reports.

35. DTI compares the total amount a consumer owes to the total amount a consumer earns.

36. Equifax regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Equifax.

37. A consumer's income, however, is not included in their consumer report; only the amount of debt is included.

38. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

39. Accordingly, a consumer is negatively affected when a CRA reports that a consumer owes a debt with a balance on it when that debt was discharged in a bankruptcy.

40. Equifax is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts are discharged.

41. However, Equifax regularly reports inaccurate information about consumers' debts after they receive a Discharge Order.

42. Rather than follow reasonable procedures to assure maximum possible accuracy, as it is required by the FCRA, Equifax frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

43. Equifax regularly publishes consumer information that conflicts with the information provided by data furnishers, included in Equifax's credit files, contained in public records that Equifax regularly accesses, and/or sourced through Equifax's independent and voluntary efforts.

44. Such inaccuracies are made in violation of the FCRA at 15 U.S.C. § 1681e(b).

45. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Equifax for its inaccurate consumer reporting following a Chapter 7 Bankruptcy Discharge, including failure to accurately report which debts were discharged.

46. Therefore, Equifax is on continued notice of its inadequate post-bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

*Plaintiff's Chapter 7 Bankruptcy*

47. On or around June 29, 2020, NCA became a debt collector to a debt alleged to be owed by the Plaintiff, hereinafter "NCA Account."

48. The NCA Account has an account number ending with x1592.

49. Plaintiff filed for a Chapter 7 Bankruptcy on or around January 17, 2023, in the United States Bankruptcy Court for the District of Nevada, petition no. 2:23-bk-10136.

50. The NCA Account is listed on the Chapter 7 Bankruptcy Petition, and references the last 4 digits of the account number (x1592) and includes its balance of $468.00.

51. NCA was notified of the filing of the bankruptcy as evidenced by the creditor matrix from Plaintiff's Chapter 7 Bankruptcy Petition.

52. Plaintiff received an Order of Discharge for her bankruptcy on or about April 18, 2023.

53. The NCA Account was discharged and no longer has a balance because of this Order of Discharge, which was also sent to NCA.

*NCA's Violation of the FDCPA*

54. Pursuant to 15 U.S.C. § 1692e(8), a debt collector violates the FDCPA when it communicates or threatens to communicate to any person "credit information which is known or which should be known to be false."

55. Plaintiff's Chapter 7 Bankruptcy Petition specifically listed the NCA Account with the corresponding account number and balance as reported on the Equifax reports.

56. After the filing of Plaintiff's Chapter 7 Bankruptcy, NCA became aware of Plaintiff's bankruptcy and that the NCA Account was included in the petition.

57. Subsequently, NCA became aware that it could no longer collect on the NCA Account after an Order of Discharge was entered in Plaintiff's Chapter 7 Bankruptcy.

58. NCA known or should have known what accurate information it should report to Equifax.

59. Pursuant to 15 U.S.C. § 1692f, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

60. By sending the inaccurate credit information to Equifax, NCA was acting unfairly and unconscionably in order to collect on the NCA Account.

61. Accordingly, NCA's reporting of inaccurate credit information about the NCA Account to Equifax violates multiple provisions of the FDCPA.

62. For the purposes of this action, only a close relationship to common law harm is needed, not an exact duplicate.

63. Plaintiff suffered various emotional harms including, but not limited to, increased heartrate, difficulty with sleep, anxiety, and stress associated with NCA's misrepresentations of the NCA Account to Equifax.

64. NCA's conduct demonstrated a reckless disregard for causing Plaintiff to suffer from emotional stress.

65. NCA's violations were knowing, willful, negligent, and/or intentional, and NCA did not maintain policies and procedures reasonably adapted to avoid such violations.

66. NCA's collection efforts with respect to the alleged debt caused Plaintiff to suffer concrete and particularized harm, inter alia, because the FDCPA provides Plaintiff with the legally protected right to not be misled regarding the characteristics and legal status of the alleged debt.

67. NCA's conduct with respect to its collection efforts were material in that the same affected and frustrated Plaintiff's ability to intelligently respond to NCA's collection efforts.

68. NCA's reporting further caused distress, embarrassment, humiliation, disruption, and other damages and consequences.

69. Because of the way the NCA Account was reported, NCA misleads and deceives Plaintiff into the mistaken belief that the NCA Account is still due and owing after her Chapter 7 Bankruptcy.

70. NCA's collection efforts with respect to the debt caused Plaintiff to suffer concrete and particularized harm, inter alia, because the FDCPA provides Plaintiff with the legally protected right to not be harassed or treated unfairly in connection with the collection of a debt.

71. NCA's collection efforts with respect to the NCA Account caused Plaintiff to suffer concrete and particularized harm, inter alia, because the FDCPA provides Plaintiff with a legally protected right to not suffer an invasion of privacy in connection with the collection of a debt.

72. In reliance on NCA's conduct, Plaintiff expended time and money in an effort to mitigate the risk of future financial harm in the form of dominion and control over her funds.

73. Because of NCA's incorrect reporting to Equifax, Plaintiff expended time, money, and resources.

74. As a result of NCA's deceptive, misleading, unfair, unconscionable, and false debt collection practices, Plaintiff has been damaged.

<u>*The Inaccuracies on Equifax's Consumer Report*</u>

75. On or about June 14, 2023, Equifax prepared a credit report for the Plaintiff and included information pertaining to her financial accounts.

76. The Plaintiff reviewed the Credit Report after receiving her discharge from Bankruptcy.

77. The Credit Report was created after Plaintiff's Chapter 7 Bankruptcy and after Plaintiff received an Order of Discharge.

78. The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on her Credit Report.

79. Furnishers reported the Plaintiff's bankruptcy and discharge information to Equifax.

80. Equifax knew or should have known about Plaintiff's Chapter 7 Bankruptcy and which accounts were discharged in Plaintiff's bankruptcy.

81. In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Equifax through multiple sources such as PACER, but Equifax failed to review those sources or knowingly rejected them.

82. Equifax prepared one or more consumer reports concerning Plaintiff after Plaintiff received an Order of Discharge from her Chapter 7 Bankruptcy.

83. However, Equifax failed to accurately report Plaintiff's Chapter 7 Bankruptcy filing and failed to report the NCA Account as a discharged debt with a zero balance. *See* Exhibit A.

84. Upon information and belief, Equifax received notice of Plaintiff's bankruptcy discharge through its independent collection of Plaintiff's consumer information through vendors such

as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

85. Equifax also obtains information from other CRAs (who commonly share information).

86. Equifax is aware that CRAs are generally required to report accounts that were actually discharged in the bankruptcy proceedings as included and discharged in bankruptcy.

87. The NCA Account included in Plaintiff's bankruptcy and the creditors from those accounts were notified of Plaintiff's Chapter 7 Bankruptcy.

88. Equifax should have reported the NCA Account as an account that was included in Plaintiff's Chapter 7 Bankruptcy and was discharged through the bankruptcy and should now be reported as having a zero balance.

89. Instead, Equifax incorrectly reported the NCA Account as active account that was charged off with an outstanding balance.

90. Equifax knew or had reason to know that the reported information was contradicted by notices received from third parties as well as from the bankruptcy proceedings themselves.

91. If not patently inaccurate, Equifax inaccurate reporting of Plaintiff's Chapter 7 Bankruptcy is materially misleading.

*Plaintiff's Damages*

92. As a preliminary matter, NCA failed to update the NCA Account information to show that it was discharged through Plaintiff's Chapter 7 Bankruptcy and failed to inform Equifax that the NCA Account no longer has a balance and should be reported as discharged.

93. Additionally. Equifax failed to include Plaintiff's Chapter 7 Bankruptcy on its consumer report and failed to mark the NCA Account as a discharged debt.

94. Plaintiff's creditworthiness is lowered because Defendants reported the NCA Account as a charged-off account that was not discharged in bankruptcy and that still has a balance that is due and owing.

95. As an individual attempting to improve her credit score for future credit transactions, the Plaintiff was harmed because of Defendants' inaccurate reporting of Plaintiff's Chapter 7 Bankruptcy.

96. Equifax's consumer report failed to include Plaintiff's Chapter 7 Bankruptcy and failed to update the NCA Account appropriately, which causes severe damage to Plaintiff's creditworthiness and her financial wellbeing because the Equifax's erroneous reporting effects Plaintiff's DTI.

97. On or about August 18, 2023, Equifax's inaccurate reporting was published to Capital One N.A. Bank, which resulted in a denial of Plaintiff's credit card application.

98. Plaintiff's consumer credit file and consumer reports were also reviewed by numerous other entities after the discharge of her bankruptcy; those entities viewed the erroneous information published by Equifax and communicated by NCA.

99. As a direct result of Defendants' inaccurate reporting and failure in investigating disputes, Plaintiff suffered damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

100. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

## COUNT I

## VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

101. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

102. Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires CRAs, like Equifax, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

103. Equifax negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer receives a Discharge Order.

104. Equifax received notice of Plaintiff's bankruptcy and discharge through public records, independent collection of consumer information directly obtained by Equifax through sources of consumer information such as Lexis-Nexis, Equifax's own files, and information provided by data furnishers, yet Equifax misapplied that information.

105. Equifax's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who file Chapter 7 Bankruptcies.

106. Equifax's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

107. Equifax's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by 15 U.S.C. § 1681e(b).

108. Equifax knows the information that it reports about consumers' bankruptcies is often inconsistent with public records and its own files.

109. However, Equifax failed to mark the NCA Account as a discharged debt.

110. Equifax's failure to maintain and employ reasonable procedures to assure the information it reports is accurate is particularly egregious because the Equifax regularly and voluntarily search for consumer bankruptcy information to include in credit files.

111. Equifax knew or should have known that it is obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

112. Equifax knew or should have known that it is obligated, by the FCRA, to update its consumer reports and the relevant tradelines after receiving notice of a Chapter 7 Bankruptcy Discharge.

113. Equifax knew or should have known that the effect of a Discharge Order in Chapter 7 Bankruptcy is to discharge only the statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

114. CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving the Equifax.

115. Therefore, Equifax has ample notice of its obligations under the FCRA and its continued use of unreasonable procedures.

116. If Equifax contends that it did not have sufficient notice, Equifax must justify its own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including when consumers file for Chapter 7 Bankruptcy.

117. Equifax regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties for a profit.

118. When Equifax received notice of Plaintiff's bankruptcy information, it had an obligation to ensure it reported Plaintiff's discharge and its effects with maximal accuracy.

119. Unfortunately, Equifax willfully and consciously breached its duties as a CRA and deprived Plaintiff of her right to a fair and accurate consumer report.

120. Despite knowledge of their legal obligations, Equifax violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report.

121. Equifax knows that a debt that was discharged in a bankruptcy should be reported as discharged on credit reports.

122. Equifax knew or should have known the information it reported about the NCA Account was inaccurate.

123. Equifax knew or should have known that it should have reported the Plaintiff's Chapter 7 Bankruptcy under its public records section on the consumer reports it prepares.

124. Equifax violated 15 U.S.C. § 1681e(b) by failing to report accurate information when the Equifax knew or should have known that the information Equifax are reporting is inaccurate, and/or otherwise contradicted by information known by Equifax, reported to Equifax, and/or reasonably available to Equifax.

125. Equifax's violations of 15 U.S.C. § 1681e(b) were willful.

126. Alternatively, Equifax's violations of 15 U.S.C. § 1681e(b) were negligent.

127. Equifax's inaccurate reporting damaged Plaintiff's creditworthiness.

128. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Equifax for failing to report Plaintiff's Chapter 7 Bankruptcy accurately and for failing to report the NCA Account as a discharged debt with a zero balance.

129. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

130. Equifax is a direct and proximate cause of Plaintiff's damages.

131. Equifax's actions are substantial factor in Plaintiff's damages.

132. Therefore, Equifax is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## COUNT II

## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e

133. Plaintiff repeats, reiterates, and incorporates the allegations contained in paragraphs above herein with the same force and effect as if the same were set forth at length herein.

134. NCA's debt collection efforts attempted and/or directed towards the Plaintiff violated the various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692e.

135. Pursuant to 15 U.S.C. § 1692e: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

136. Pursuant to 15 U.S.C. § 1692e(8), a debt collector violates the FDCPA when it communicates or threatens to communicate to any person "credit information which is known or which should be known to be false . . ."

137. Pursuant to 15 U.S.C. § 1692e(10), a violation occurs when a debt collector makes a collection communication with "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

138. Accordingly, NCA violated 15 U.S.C. § 1692e:

a. By falsely reporting the NCA Account as a collection account with a balance due to Equifax when NCA known or should have known that it was discharged in the Plaintiff's Chapter 7 Bankruptcy.

139. By reason thereof, NCA is liable to Plaintiff for judgment in that NCA's conduct violated 15 U.S.C. § 1692e *et seq.* of the FDCPA, and includes actual damages, statutory damages, costs, and attorneys' fees.

## COUNT III

## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f

140. Plaintiff repeats, reiterates, and incorporates the allegations contained in paragraphs above herein with the same force and effect as if the same were set forth at length herein.

141. NCA's debt collection efforts attempted and/or directed towards the Plaintiff violated the various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692f.

142. Pursuant to 15 U.S.C. § 1692f, "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

143. NCA violated 15 U.S.C. § 1692f:

a. By unfairly and unconscionably reporting the NCA Account with a balance to Equifax when NCA known or should have known that the NCA Account was discharged in Plaintiff's Chapter 7 Bankruptcy.

144. By reason thereof, NCA is liable to Plaintiff for judgment in that NCA's conduct violated 15 U.S.C. § 1692f *et seq.* of the FDCPA, which includes actual damages, statutory damages, costs, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant Equifax Information Services, LLC and Defendant National Credit Adjusters, LLC for the following:

(a) Declaratory judgment that Defendant Equifax violated the FCRA, 15 U.S.C. § 1681e(b);

(b) Declaratory judgment that Defendant NCA violated the FDCPA, pursuant to 28 U.S.C. § 2201;

(c) An award of actual damages against Defendant Equifax pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(d) An award of statutory damages against Defendant Equifax pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(e) An award of punitive damages against Defendant Equifax, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(f) An award of actual damages against Defendant NCA pursuant to 15 U.S.C. § 1692k(a)(1);

(g) An award of statutory damages against Defendant NCA pursuant to 15 U.S.C. § 1692k(a)(2)(A).

(h) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2) and 15 U.S.C. § 1692k(a)(3); and

(i) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: November 20, 2023                    Respectfully submitted,

*/s/ Robert M. Tzall, Esq.*
Robert M. Tzall, Esq.
Nevada State Bar No. 13412
Contemporary Legal Solutions
2551 North Green Valley Parkway
Building C, Suite 303
Henderson, NV 89014
(702) 666-0233
office@contemporarylegalsolutions.com
*Counsel for Plaintiff*